806 P.2d 32

STATE of New Mexico, ex rel. STATE
HIGHWAY AND TRANSPORTATION
DEPARTMENT, Petitioner–Appellee,

v.

Eloy M. GARLEY and Elfides Garley,
his wife, Defendants–Appellees,

Jerry Olguin,
Defendant–in–Intervention–Appellant.

No. 18684.

Supreme Court of New Mexico.

Jan. 24, 1991.

Williams, Conroy & Sims, Anthony J. Williams, Belen, for defendant-in-intervention-appellant.

Edward J. Apodaca, Albuquerque, for defendants-appellees Garley.

Hal Stratton, Atty. Gen. and Hugh W. Parry, Asst. Atty. Gen., Santa Fe, for petitioner-appellee.

## OPINION

MONTGOMERY, Justice.

This is an appeal from a summary judgment in favor of the lessor and against the lessee under a lease of a certain tract of land in Valencia County, New Mexico. The State, through the Highway Department, brought this action to condemn the leased tract, naming only the lessor as defendant. The lessee intervened and asserted an interest in the tract by virtue of his lease. The lessor resisted this assertion on the ground that a clause in the lease provided that in the event of condemnation the lease would terminate and all proceeds would go to the lessor. The lessee sought to avoid the effect of the clause on grounds of mutual mistake, misrepresentation, and unconscionability. The trial court concluded that there was an insufficient basis for avoiding the clause and entered summary judgment in favor of the lessor. We agree that the case presented to the trial court gave rise to no genuine issue of material fact and that on the facts as presented the lessor was entitled to summary judgment. We therefore affirm.

## I. FACTS AND ISSUES

The lease was entered into on September 16, 1977, between the owner of the property as lessor, appellee Eloy Garley, and the lessee, appellant Jerry Olguin. It was a standard, printed, "long-form" lease, containing the following provision:

Further, Lessee hereby covenants and agrees with Lessor that in the event the said demised premises, or any part thereof, are taken, damaged consequentially or otherwise, or condemned by public authority, this Lease shall terminate, as to the part so taken, as of the date title shall vest in the said public authority, and the rental reserved shall be adjusted * * * * All damages and payments resulting from the said taking, damaging, or condemnation of the said demised premises shall accrue to and belong to Lessor, and Lessee shall have no right to any part thereof.

The property subject to the lease was a 3.7–acre tract, on which a bar and lounge was situated, located at the intersection of State Highways 47 and 49 (sometimes called "the Valencia Y"). Mr. Olguin, the lessee, later swore in his affidavit (submitted in opposition to the lessor's motion for summary judgment): "At the time the lease was entered into and at the time of the renewal, both Mr. Garley [the lessor] and I understood that a reconstruction of the Valencia Y * * * was contemplated, and that the condemnation and destruction of the bar and lounge on the premises would result." However, according to the affidavit, both the lessor and the lessee believed that the condemnation would be partial, rather than a complete taking of the entire tract, and that upon such partial condemnation the lessor would use the condemnation proceeds to reconstruct the bar and the lease would continue. Based upon this "mutual mistake," the lessee sought to have the condemnation clause in the lease declared "void" and unenforceable so that he could share in the condemnation award. See NMSA 1978, § 42–2–15(D) (court in condemnation proceeding shall apportion amount of award among defendants according to their interests in condemned

property); 27 Am.Jur. 2d *Eminent Domain* § 250 (1966) (absent other provision in lease, lessee's entitlement to share in condemnation award depends on statutory provisions).

The renewal of the 1977 lease mentioned in the lessee's affidavit took place in June 1980, when the parties amended the lease to provide for an additional renewal for five years. The term of the original lease had been set to expire on September 30, 1980, but the agreement had granted the lessee, in several typewritten paragraphs at the end of the otherwise printed form, the option to renew for an additional five years. The effect of the 1980 amendment was to exercise the lessee's first five-year renewal option, expiring in 1985, and to grant an option to renew for an additional five years, expiring in 1990. The 1980 amendment was entirely typewritten. In July of 1985, the lessee exercised his second option to renew, extending the lease for an additional five years.

The lessee's affidavit recited that within the last year he had learned to his surprise that the state intended to take all of the lessor's property, leaving no portion upon which the bar could be rebuilt. The affidavit said: "Mr. Garley's and my assumption and belief about what the Highway Department was going to condemn turned out to be mistaken." The Highway Department did indeed condemn the entire tract in this action, and so, according to the lessee, his and the lessor's intentions and expectations were frustrated.

In this the ensuing condemnation action, the lessee intervened and set up his claimed interest in the premises through an answer in intervention. He also crossclaimed against the lessor, requesting judgment for a portion of the Highway Department's condemnation deposit, which had already been drawn down by the lessor. The lessor moved for summary judgment, claiming that there was no genuine issue of fact and that under the condemnation clause in the lease he was entitled to judgment as a matter of law. The lessee responded with the affidavit mentioned above and by filing a motion to amend his answer and cross-claim to allege specifically that the lease was based on a mutual mistake and a misrepresentation and that the condemnation clause should therefore be declared unenforceable or reformed to give effect to the parties' intentions. The proposed amended answer and crossclaim also asserted that the clause was unconscionable.

The trial court granted the motion for summary judgment. (It did not reach the lessee's motion to amend his answer and crossclaim, obviously because in view of the ruling on the motion for summary judgment it believed that the amended pleading would be legally insufficient.) The order granting summary judgment did not assign reasons for the ruling, but in announcing it from the bench the court said: "It's not in the agreement. What's in the agreement is contrary to the position taken by the intervenor even if it had been a partial taking * * * * [A] Judge's responsibility is not to write a new contract for the parties but to interpret the contract * * * *" The court recognized that "neither of the parties anticipated that there would be a complete condemnation of all of the land," but concluded that the lease was sufficiently clear to require summary judgment in favor of the lessor.

On appeal, the lessee contends primarily that the condemnation clause in the lease should not be enforced because he and the lessor were mutually mistaken in their belief that the Highway Department's condemnation of the lessor's tract would be partial instead of total. Alternatively, he contends that the lease should be reformed to delete the condemnation clause due to the parties' mutual mistake. As another alternative, the lessee asserts that the lessor's statements to him about his intention to rebuild the bar on the land remaining after the partial condemnation were misrepresentations entitling him, the lessee, to avoidance or reformation of the clause. Finally, as his last alternative, the lessee argues that the clause should not be enforced because it is unconscionable and that the trial court erred in not allowing him to present evidence of the commercial setting surrounding the clause and the rea-

sons why, in that setting, it operates in an unconscionable way.

## II. MISTAKE AND MISREPRESENTATION

### A. *Mistake as a Ground for Avoidance*

As support for his principal contention on appeal, the lessee cites Section 152 of the *Restatement (Second) of Contracts* (1979), which reads in pertinent part:

> Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake under the rule stated in Section 154.

Although no New Mexico case appears to have adopted this section of the *Restatement,* there are intimations in our case law that New Mexico recognizes mutual mistake as a ground for avoidance of a contract, along with other well-recognized grounds such as fraud, duress and undue influence. *See, e.g., Woods v. City of Hobbs,* 75 N.M. 588, 408 P.2d 508 (1965); *Durham v. Gulf Interstate Eng'g Co.,* 74 N.M. 277, 393 P.2d 15 (1964); *Mendenhall v. Vandeventer,* 61 N.M. 277, 299 P.2d 457 (1956); *Smith v. Loos,* 78 N.M. 339, 431 P.2d 72 (Ct.App.), *cert. denied,* 78 N.M. 337, 431 P.2d 70 (1967). Certainly we have no reason to think that in an appropriate case a New Mexico court would *not* grant relief by way of avoidance or rescission to a contracting party under the circumstances outlined in this section of the *Restatement.*

Here, the lessee argues that his and the lessor's mistake as to the extent of the Highway Department's impending condemnation was a basic assumption on which the lease was made and had a material effect on their agreed exchange of performances. The lessee swore in his affidavit that he would not have entered into the lease had he and the lessor not been mistaken. He went on to say that the lessor's inability to rebuild the bar at the same location had forced him to go out of business and sustain a substantial loss. These sworn aver-

ments were sufficient to raise issues of fact as to the matters they covered.

■ However, assuming that those matters would have been proved to the satisfaction of the fact-finder at trial, they would not have afforded a ground for the relief sought by the lessee, for several reasons. The first, and probably paramount, reason is that the lessee was seeking only partial avoidance of the lease. It is well settled that "[a] contract cannot be avoided in part" except in circumstances not present here. *Restatement (Second) of Contracts* § 383 (1979); *accord* 17 Am. Jur.2d *Contracts* § 488 (1964). New Mexico follows this well-settled rule. *See In re Dasburg,* 45 N.M. 184, 113 P.2d 569 (1941) (rule applies where contract not divisible); *Ford v. Norton,* 32 N.M. 518, 260 P. 411 (1927) (same).

The lessee in this case obviously is not seeking to avoid, or rescind, the entire lease. Were he to do so successfully, he would divest himself of any interest in the condemned parcel and thereby forego any right to share in the condemnation proceeds. As stated in the comment to the *Restatement,* "He cannot disaffirm part of the contract that is particularly disadvantageous to himself while affirming a more advantageous part, and an attempt to do so is ineffective as a disaffirmance." *Restatement* § 383 comment a.

■ There are additional reasons why the lessee in this case cannot avail himself of mutual mistake as a ground for avoidance or disaffirmance of his contractual obligation. First, it appears that the mistake related not to a presently existing fact but rather to an eventuality that was to occur in the future. The lessee's affidavit described the parties' "mutual belief and understanding that the condemnation by the state *would be* partial" and described their discussions of the *"probable* condemnation" (emphasis added). But neither it nor anything else submitted on the motion for summary judgment raised even an inference that, at the time of the original lease in 1977, its renewal in 1980, or its second renewal in 1985, the Highway De-

partment's *then existing* intention was to condemn the entire parcel. In other words, nothing was presented on summary judgment to establish that the parties' belief at the time of making the contract was erroneous; the Highway Department may have intended initially to condemn only part of the property and then changed its mind.

The *Restatement* defines a mistake as "a belief that is not in accord with the facts." *Restatement* § 151. The comment makes it clear that "the erroneous belief must relate to the facts as they exist at the time of the making of the contract. A party's prediction or judgment as to events to occur in the future, even if erroneous, is not a 'mistake' as that word is defined here." *Id.* comment a. *See also Quintana v. Motel 6, Inc.,* 102 N.M. 229, 231, 693 P.2d 597, 599 (Ct.App.1984) (erroneous opinion or error of judgment respecting future conditions will not justify setting aside release).

■ Still another reason why the lessee cannot invoke mutual mistake to avoid the condemnation clause lies in the exception stated in Section 152 of the *Restatement:* A party cannot avoid a contract on account of a mutual mistake if he bears the risk of the mistake under Section 154. According to the latter section,

> A party bears the risk of a mistake when
>
> (a) the risk is allocated to him by agreement of the parties, or
>
> (b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or
>
> (c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so.

All three of these sub-rules appear applicable in this case. First, the lease provides that "in the event the said demised premises, *or any part thereof,* are taken," etc., the lease will terminate as to the part taken and the condemnation proceeds will belong to the lessor. This provision has the effect of allocating to the lessee the risk of being mistaken as to the condemning authority's intention concerning the extent of any impending condemnation. Of course, since the lessee seeks to disaffirm this clause, it may not be appropriate to rely solely on it as allocating the risk of mistake to the lessee; but in the context of the parties' negotiations and dealings, we think the risk of mistake is properly assigned to the lessee by virtue of subsections (b) and (c) of Section 154 as well as under the terms of the agreement itself.

The lessee's affidavit declared that he and the lessor had discussed the probable condemnation on several occasions prior to the renewal of the lease. According to the affidavit, the parties shared the misunderstanding as to the extent of the eventual condemnation from the time the lease was first executed in 1977 through the time of its second renewal in 1985. During all of this time the lessee made no attempt to ascertain from the Highway Department what the intended scope of the condemnation was. The lessor testified at his deposition that he first learned of the Highway Department's intention to expand the Valencia Y in 1961, and he confirmed that he had discussed the future widening of the intersection with the lessee on various occasions. Thus, the materials submitted in connection with the motion for summary judgment established that the lessee was aware that he had only limited knowledge about the extent of the condemnation but treated his knowledge as sufficient to execute the lease and renew it twice. There was nothing to give rise to a genuine issue of fact to the contrary. Portions of the original lease and all of the 1980 amendment were individually negotiated, as indicated by the typewritten additions to the printed lease form and the entirely typewritten amendment. In these circumstances it was reasonable for the court to allocate the risk of mistake to the lessee.

For all of these reasons, the trial court properly held that the condemnation clause could not be avoided on the ground of mutual mistake.

**B.** *Mistake as a Ground for Reformation*

■ Perhaps realizing the difficulty with applying the doctrine of mutual mistake to

avoid only part of his lease, the lessee places heavy reliance on the equitable remedy of reformation as an alternative remedy that should have been permitted by the trial court. Although a contract, if not "divisible," cannot be avoided only in part, that prohibition does not extend to reformation of only a part of a contract on the ground of either mistake or misrepresentation. *Restatement* § 383 comment a. So the lessee argues that the parties' mutual mistake entitled him to seek reformation of the lease to correspond with their true intention.

New Mexico has recognized mutual mistake as a ground for reformation of a contract or other document in several cases. *See, e.g., Chromo Mountain Ranch Partnership v. Gonzales,* 101 N.M. 298, 681 P.2d 724 (1984) (land sale contract); *Morris v. Merchant,* 77 N.M. 411, 423 P.2d 606 (1967) (reservation of mineral rights in deed); *Buck v. Mountain States Inv. Corp.,* 76 N.M. 261, 414 P.2d 491 (1966) (fire insurance policy); *Cleveland v. Bateman,* 21 N.M. 675, 158 P. 648 (1916) (deed). These cases represent applications of the rule in Section 155 of the *Restatement:*

> Where a writing that evidences or embodies an agreement in whole or in part fails to express the agreement because of a mistake of both parties as to the contents or effect of the writing, the court may at the request of a party reform the writing to express the agreement * * * *

*Restatement (Second) of Contracts* § 155 (1979).

There are several difficulties, however, with the lessee's invocation of this rule in the present case. First, although evidence was adduced in connection with the motion for summary judgment that the lease failed to express the parties' agreement, there was no evidence that the mistake related either to the contents of the lease or to its effect insofar as total condemnation was concerned. Succinctly stated, the mistake was the assumption that the condemnation would be partial, whereas it turned out to be total. This was not a mistake as to the contents of the writing, the parties assum-

ing that it expressed their intention whereas in fact it said something else. As to the effect of the writing, no evidence was adduced that the parties intended a different effect in the event of total condemnation than the one specified in the writing—allocating all of the proceeds to the lessor.

■ Second, it would not help the lessee to reform the document to express the parties' agreement as the lessee described it in his affidavit—an agreement that in the event of partial condemnation the lessor would rebuild the bar on his remaining land. The agreement so reformed would simply not apply to the situation that actually developed: The condemnation was total, and the parties had no agreement, one way or the other, as to what would happen in that situation.

In response to a query at oral argument, counsel for the lessee stated that the way in which he believed the agreement should be reformed was simply to delete the condemnation clause. This is obviously tantamount to partial avoidance, which as we have seen is not permitted. Furthermore, there was no evidence that this is what the parties actually intended—that they really intended *nothing* in the event of condemnation, and their mistake was in having any clause at all in the agreement.

The lessee did not present a sufficient basis for reformation due to mutual mistake, and in any event the reformation he proposed—to change the lease to reflect what the parties actually intended—would not afford him the relief he sought: to share in the condemnation award.

### C. *Misrepresentation*

The same difficulties as have been reviewed above with respect to mutual mistake attend the lessee's alternative arguments on the basis of misrepresentation. We acknowledge, of course, that in an appropriate case the law will afford a party relief from a contractual obligation, through avoidance or reformation, where the contract is based in material part on the other party's misrepresentation. Many of the authorities cited thus far in this opinion support this proposition. We also

grant that the evidence presented by the lessee was sufficient to raise a genuine issue of fact as to whether or not the lessor had represented that the impending condemnation would be partial and that he would rebuild the bar on his remaining land with the condemnation proceeds.

■ However, this misrepresentation, assuming it occurred, was not sufficient to enable the lessee to partially disaffirm the lease, for the same reason given above with respect to partial avoidance on the ground of mutual mistake. Likewise, reformation of the lease based on this assumed misrepresentation would not avail the lessee any more than the attempted reformation based on the claimed mistake. The misrepresentation was not over the contents or effect of the document; and even if the document were reformed to correspond with the parties' intention, it would not deal with the contingency that actually occurred.

There is an additional reason why the misrepresentation alleged by the lessee does not enable him to escape the consequences of the condemnation clause in his lease. As alleged, the misrepresentation consisted in part of a misstatement of fact (that the original intention of the Highway Department was to condemn only partially—though as we have seen there was no evidence that the Highway Department ever held this intention), in part as to a misprediction of a future occurrence (that the Highway Department would later condemn only part of the tract), and in part as to an assurance of what the lessor would do with the condemnation proceeds (that he would rebuild the bar). Only the first of these could form the basis for an actionable misrepresentation. *See* D. Dobbs, *Handbook on the Law of Remedies* § 9.1, at 593 (1973) (footnotes omitted) ("[A] misrepresentation, like a mistake, must be one of fact, in the sense that [predictions] about the future or promises about the future will not be deemed actionable."). *But see Register v. Roberson Constr. Co.*, 106 N.M. 243, 246, 741 P.2d 1364, 1367 (1987) (promises as to future actions will support an action for fraud where defendant states

opinion or belief as to future occurrences which are shown to have had no support by facts at time opinions or beliefs were given). As to the third component of the alleged misrepresentation, an assurance (*i.e.,* a promise) cannot be converted into a ground for avoiding or reforming a contract simply by recasting it as a "misrepresentation" when it turns out that the promisor either does not or cannot keep the promise.

The trial court properly entered summary judgment on the lessee's claim of misrepresentation as a ground for avoiding or reforming the lease.

### III. UNCONSCIONABILITY

The lessee's next challenge to the condemnation clause in this case is based on the assertion that it is unconscionable, at least in its application to him and his lease. This Court has applied the doctrine of unconscionability to invalidate a clause in a lease, *Drink, Inc. v. Martinez*, 89 N.M. 662, 665, 556 P.2d 348, 351 (1976) (enforcement of option to purchase held unconscionable as to property not subject to original lease), and has generally embraced the doctrine of "substantive unconscionability," *Guthmann v. La Vida Llena*, 103 N.M. 506, 511, 709 P.2d 675, 680 (1985) ("When terms are unreasonably favorable to one party a contract may be held to be substantively unconscionable.") (citing *Bowlin's, Inc. v. Ramsey Oil Co.*, 99 N.M. 660, 668, 662 P.2d 661, 669 (Ct.App.), *cert. denied*, 99 N.M. 644, 662 P.2d 645 (1983), and *Williams v. Walker–Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C.Cir.1965)). *See also Smith v. Price's Creameries*, 98 N.M. 541, 545, 650 P.2d 825, 829 (1982). The *Restatement* formulates the doctrine as follows:

If a contract or term thereof is unconscionable at the time the contract is made a court may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term, or may so limit the application of any unconscionable term as to avoid any unconscionable result.

*Restatement (Second) of Contracts* § 208 (1979). In *Guthmann,* we adopted the *Restatement's* definition of "unconscionable" as " 'such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other,' " *id.* comment b (quoting *Hume v. United States,* 132 U.S. 406, 411, 10 S.Ct. 134, 136, 33 L.Ed. 393 (1889)), and added that "[s]ubstantive unconscionability is concerned with contract terms that are illegal, contrary to public policy, or grossly unfair." *Guthmann,* 103 N.M. at 510, 709 P.2d at 679. The touchstone appears to be gross unfairness.

In *Drink, Inc. v. Martinez,* we said: "The doctrine of unconscionability was intended to prevent oppression and unfair surprise, not to relieve a party of a bad bargain." 89 N.M. at 665, 556 P.2d at 351. This was reaffirmed in *Guthmann,* 103 N.M. at 513, 709 P.2d at 681, where we examined the commercial background of the particular trade and held that a provision in a life-care retirement center contract barring refund of a subscriber's payment was not unconscionable. In *Smith v. Price's Creameries,* we drew upon Section 2–302 of the Uniform Commercial Code, NMSA 1978, Section 55–2–302, as declarative of the doctrine. 98 N.M. at 545, 650 P.2d at 829. Subsection (1) of Section 55–2–302 is virtually identical to Section 208 of the *Restatement.* Subsection (2) provides that when a clause is claimed to be unconscionable, "the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."

Section 2–302 of the Uniform Commercial Code applies, of course, to sales of goods, not leases of real property. *See* NMSA 1978, § 55–2–102. However, we agree with the lessee that the section sets out what should be the rule under the common law doctrine of unconscionability as applied to all contracts, including real property leases. *See* R. Cunningham, W. Stoebuck & D. Whitman, *The Law of Property* § 6.10 (1984) (leases are part contract and part real property instruments). Therefore, a court in which a portion of a contract, including a lease, is challenged as unconscionable should receive evidence, if relevant, as to its commercial setting, purpose and effect in ruling on unconscionability.

■ The lessee in the instant case invokes the admonition of Subsection 55–2–302(2) to argue that the trial court's summary judgment prevented him from presenting evidence as to the commercial setting, purpose and effect of the condemnation clause to aid the court in making the determination as to whether or not it was unconscionable. Since the question is an issue of law to be determined by the court, *Smith,* 98 N.M. at 545, 650 P.2d at 829, the lessee's argument boils down to the assertion that summary judgment is improper whenever a claim of unconscionability is made. We disagree. As the lessee admits, there is ample authority upholding the validity of clauses of this type. *See generally* Annotation, *Validity, Construction, and Effect of Specific Provision of Lease or Statute Relating to Rights and Compensation of Lessee in Event of Condemnation,* 96 A.L.R.2d 1140, 1162–65 (1964). So, when the lessor moved for summary judgment and established that there was no issue of fact that the clause had been included in the lease, the burden shifted to the lessee to present some evidence in support of his contention that the commercial setting, purpose and effect of the clause in this case were such as to make it unconscionable.

The lessee did not satisfy this burden. Although he presented evidence in his affidavit that the effect of the clause was to force him out of business and impose a "substantial loss" upon him, he made no showing that this was the purpose of the clause. More importantly, he presented no evidence from which the court could conclude that, in the commercial setting in which the clause operated, it constituted oppression and unfair surprise, rather than simply a bad bargain which the lessee had assumed in 1977 and reaffirmed in 1980 and 1985.

In order for the trial court to have held a trial on the issue of unconscionability, it

was incumbent on the lessee, as the party opposing summary judgment, to come forward with evidence sufficient to create a genuine issue of fact that this particular clause operated in an unconscionable manner in the commercial setting in which he and the lessor dealt with one another. He did not undertake to do this, and so the trial court properly entered summary judgment on the issue of unconscionability.

### IV. CONCLUSION

In *Smith v. Price's Creameries*, 98 N.M. at 545, 650 P.2d at 829, we said:

> Generally, a party who executes and enters into a written contract with another is presumed to know the terms of the agreement, and to have agreed to each of its provisions in the absence of fraud, misrepresentation or other wrongful act of the contracting party. Each party to a contract has a duty to read and familiarize himself with its contents before he signs and delivers it, and if the contract is plain and unequivocal in its terms, each is ordinarily bound thereby. [Citations omitted.]

The trial court in granting summary judgment in this case was applying these principles. As we have seen, these broad principles are subject to numerous exceptions, as the word "ordinarily" indicates. Even the principle, also applied by the trial court, that the court will not rewrite the agreement between the parties, *id.*, is subject to various exceptions, as the remedy of reformation and the doctrine of unconscionability illustrate. However, in this case the lessee presented no adequate reason to excuse him from the effect of the clause to which he agreed—not just once but three times and with knowledge that condemnation by the Highway Department was in the offing. Under those circumstances, the trial court correctly applied the law, and its summary judgment is affirmed.

IT IS SO ORDERED.

RANSOM and BACA, JJ., concur.