580 P.2d 365

Andrew L. BETTWY, State Land Commissioner, State of Arizona, and the Arizona State Land Department, Appellants,

v.

BLACK CANYON GREYHOUND PARK, INC., an Arizona Corporation, Appellee.

No. 1 CA–CIV 3584.

Court of Appeals of Arizona,
Division 1,
Department A.

April 13, 1978.
Rehearing Denied May 17, 1978.
Review Denied June 13, 1978.

Bruce E. Babbitt, Former Atty. Gen. by Peter C. Gulatto, Dale E. Pontius, Asst. Attys. Gen., Phoenix, for appellants.

Lewis and Roca by John P. Frank, Richard A. Hillhouse, Phoenix, for appellee.

OPINION

FROEB, Chief Judge.

Black Canyon Greyhound Park, Inc. (Black Canyon) sought by this special action to require appellants, the Arizona State Land Department (Department) and its commissioner, Andrew L. Bettwy (Commissioner), to proceed with the sale of state school trust lands. The subject property includes land upon which the Black Canyon Greyhound Park is built and some undeveloped commercial acreage in the same area. From a judgment in favor of Black Canyon, appellants bring this appeal.

Black Canyon has leased approximately 62.31 acres of state land since 1964. During the lease term it constructed on the land a greyhound racing plant, commonly known as the Black Canyon Greyhound Park. On November 21, 1973, Black Canyon filed an application to purchase the land. An appraiser employed by the Department opined that the land had a market value of $5000 per acre. Appellants' review concurred with the opinion and, on May 13, 1974, the Commissioner adopted the appraisal as his own and appraised the land at $5000 per acre. On June 6, 1974, the Commissioner approved the sale of the land in two parcels, one containing 26.35 acres and the other 4.32 acres. He determined the remaining acreage should not be sold and so ordered. On June 13, 1974, Deputy Commissioner Fritz C. Ryan, acting on behalf of the Department and the Commissioner, issued a set of "Appraisal & Determination" orders: "The Commissioner has and does hereby appraise the land at $5,000.00 per acre. TOTAL LAND APPRAISAL $131,750.00 and the IMPROVEMENTS AT $1,817,-300.00. The Department determines that the interests of the State will not be prejudiced by the sale of said land and it is the Decision of the Commissioner and Department that said land and improvements be sold according to the provisions of the related law."

Pursuant to A.R.S. § 37–214, Black Canyon appealed the appraisal to the State Land Department Board of Appeals (Board). The Board conducted a hearing and on January 14, 1975, overruled the Commissioner's appraisal and reduced it to $2250 per acre: "[I]t is ordered that the decision and appraisal set by the State Land Commissioner in appraising said land at $5,000.00 per acre on land above described is overruled as not being in the best interest of the trust, and the Board of Appeals further recommends that the appraisal on land be reduced to $2,250.00 per acre." Neither the appellants nor Black Canyon appealed from the Board's decision. On April 4, 1975, Ryan issued a second set of "Appraisal & Determination" orders, which were identical to the ones of June 13, 1974, except that the appraised value of the land was $2250 per acre as fixed by the Board.

Despite Black Canyon's repeated requests, appellants did not proceed with the sale. Black Canyon instituted this special action in the nature of a mandamus. The trial court concluded that all the statutory steps and procedures for the sale of the land had been satisfied. On May 25, 1976, the court entered its judgment ordering the Commissioner to "issue an order authorizing the sale of the subject property to the highest and best bidder therefor at public auction held at the county seat of the county wherein the land or the major portion thereof is located after notice of the sale by advertisement, all to occur forthwith and without further delay."

To determine whether the trial court's directive to the Commissioner was proper, we must answer two questions: (1) Did the Commissioner approve the sale of the land? (2) If so, can he revoke his decision to sell?

The land in question is school land granted by the United States to Arizona under the New Mexico-Arizona Enabling Act, 36 U.S.Stat. 557, and is subject to the provisions of the Enabling Act and the Arizona

Constitution. According to *Lassen v. Arizona*, 385 U.S. 458, 87 S.Ct. 584, 17 L.Ed.2d 515 (1967), § 28 of the Enabling Act, and Ariz.Const. art. X, § 1, state land must be appraised before it is sold and may not be sold for less than the appraised value. The specifics of administration are left to statute, however.

Title 37 of the Arizona Revised Statutes deals with the land law involved here. Chapter 1 establishes the state land department and the office of the state land commissioner. Among the commissioner's powers and duties is the classification and appraisal of all state lands. A.R.S. § 37-132A(4). He can appoint deputies to perform the duties of the department. A.R.S. § 37-132A(8). Chapter 2 covers the administration of public lands. An appeal from a final decision of the commissioner relating to classification or appraisal may be taken to the board of appeals by any person adversely affected by the decision. A.R.S. § 37-214(A). The decision of the board of appeals may be appealed to the superior court. A.R.S. § 37-214(D). The decision of the superior court may be appealed in the same manner as are final judgments in civil actions. A.R.S. § 37-214(E). A.R.S. § 37-214(F) provides: "If no appeal is taken, the decision of the commissioner or the board of appeals, as the case may be, shall be final and conclusive." Article 3 sets forth the procedure for the sale of state lands.

To answer the question whether the Commissioner approved the sale of the land, we look to A.R.S. § 37-236. That section provides:

Upon completion of the appraisal, if the department determines that the interest of the state will not be prejudiced by sale of the land, . . . within sixty days after the time for taking an appeal expires and no appeal is taken, or if an appeal is taken and the decision is against appellant, within sixty days after the decision is received, the department shall make an order authorizing sale of

the lands to the highest and best bidder therefor at public auction held at the county seat of the county wherein the land or the major portion thereof is located, and the department shall give notice of the sale by advertisement.

■ Appellants contend that the Commissioner never made an appraisal of the land and, therefore, he cannot be ordered to authorize the sale of the land since, according to A.R.S. § 37-236, an appraisal is a prerequisite to proceeding with the sale. We agree with the appraisal requirement but we disagree that the Commissioner has not made an appraisal.

A.R.S. § 37-132A(4) assigns the commissioner the power and the duty to appraise state land.[1] We believe the Commissioner made his appraisal on May 13, 1974, when, as the state land commissioner, he signed the following statement: "I appraise the land at $5000.00 per acre and determine that there are $1,817,300 worth of reimbursable improvements on the subject parcel; the order of sale shall also carry conditions for . . .." Not only did he make the required appraisal, he approved the sale as well. On the same worksheet, directly below the statement quoted above, he wrote: "6/6/74 OK to sell 53–26310–1 & 2 separately (not 3) proceed." This was signed with his initials. As required by A.R.S. § 37-236, the Department, through Deputy Ryan, determined that the interests of the state would not be prejudiced by the sale of the land. Ryan's certificate of appointment empowers him to execute all documents related to sales except appraisal and final order. The determination was properly made by him for the Department. A.R.S. § 37-132A(8).

Thus, we answer the first question in the affirmative. The Commissioner did approve the sale of the land.

■ Since the appellants have taken the position that there was no appraisal and that, therefore, no approval of the sale was possible and have never deviated from that

---

1. Contrary to Black Canyon's contention, the commissioner's deputy is not empowered to make the appraisal. Ryan's certificate of appointment, in listing his powers and duties, specifically reserves the making of appraisals to the commissioner.

position, they have never attempted to revoke the approval. Nevertheless, now that we have decided that the Commissioner did approve the sale, we must ask whether the can revoke his decision to sell.

Black Canyon appealed the Commissioner's appraisal of $5000 per acre to the Board. The Board overruled the appraisal set by the Commissioner and reduced it to $2250 per acre.[2] Appellants did not appeal the Board's decision as permitted under A.R.S. § 37–214(D). Since no appeal was taken, the appraisal by the Board became final and conclusive. A.R.S. § 37–214(F). In the absence of an appeal, the Board's appraisal supplanted, the Commissioner's appraisal and reconsideration by the Commissioner was precluded. The appraisal had been established.[3]

■ With the determination that an appraisal has been made, we come to the answer to the second question. The Commissioner cannot now revoke his decision to sell the land.[4] Once the decision to sell is made, the department must make an order authorizing the sale of the land and it must give notice of the sale by advertisement. All the requirements of A.R.S. § 37–236 have been fulfilled. The appraisal has been completed; the Department has determined that the interests of the state will not be prejudiced by the sale of the land; and sixty days have elapsed from the entry of the Board's decision. The terms of the statute are mandatory: "the department *shall* make an order authorizing the sale"; "the department *shall* give notice of the sale" (emphases supplied). The trial court correctly ordered appellants to comply with A.R.S. § 37–236 and to conduct the sale.

Appellants erroneously rely on *Alberts v. McGirk,* 51 Ariz. 510, 78 P.2d 483 (1938) and *Hunt v. Schilling,* 27 Ariz. 1, 229 P. 99 (1924), *supplemented* 27 Ariz. 235, 232 P. 554 (1925) to defeat finality and to permit revocation of the decision to sell until sale at public auction. Although the Arizona Supreme Court did say in *Alberts* that the department, in exercise of its supervisory discretion, may stop proceedings "any time up to the completion of the contract of sale," *Alberts* and *Hunt* were decided before the enactment of A.R.S. § 37–133(C) and the rewriting of A.R.S. § 37–214. Prior to the enactment of A.R.S. § 37–133(C) in 1952 and the amendment of A.R.S. § 37–214 in 1950, there was no language in the statutes making the decisions of the commissioner "final and conclusive" in the absence of an appeal. Since those sections now specifically require an appeal to defeat finality, *Alberts* and *Hunt* are not applicable.

■ We hold that if the final decisions of the commissioner relating to classification or appraisal are not appealed, then, as required by A.R.S. § 37–214, they become final and conclusive and the mandatory terms of A.R.S. § 37–236 requiring the department to proceed with the sale are brought into effect. Once the discretion to sell is exercised, it cannot be set aside by either the commissioner or the department.

Black Canyon has pursued its administrative remedies and has prevailed. The failure of appellants to conduct the sale is failure to perform their legal duties required under A.R.S. § 37–236. Special action relief in the nature of mandamus was, therefore, appropriately granted by the tri-

2. Appellants assert that, while the Board overruled the Commissioner's decision, it did not make an appraisal of the land but merely recommended an alternate price. They, however, assign too much significance to the use of the term "recommend" in the Board's decision. In view of the Board's conclusion that the Commissioner's appraisal was unsubstantiated and not in the best interest of the trust and the fact that it expressly overruled and reduced the appraisal, we find that $2250 is the per-acre value the Board assigned to the land even though it used the word "recommend."

3. The second set of "Appraisal & Determination" orders issued by Ryan on April 4, 1975, have no controlling legal significance. Had there been no such orders the Board's decision still would effectively bind the appellants' actions. A.R.S. § 37–214(F).

4. Our opinion in no way impinges upon the commissioner's discretion in deciding initially whether to sell or not to sell. But once that discretion has been exercised, then the terms of other statutory provisions are set into motion.

al court. *See, e. g., Cagle Bros. Trucking Service v. Arizona Corporation Commission,* 96 Ariz. 270, 394 P.2d 203 (1964); *Moeur v. Ashfork Livestock Co.,* 48 Ariz. 298, 61 P.2d 395 (1936). The trial court's order to proceed with the sale in compliance with A.R.S. § 37–236 is affirmed.

HAIRE, P. J., and EUBANK, J., concur.