666 P.2d 469

**FARMERS INVESTMENT COMPANY, a corporation, Plaintiff-Appellee,**

v.

**ARIZONA STATE LAND DEPARTMENT and Joe Fallini, State Land Commissioner; Cyprus Pima Mining Company, an Arizona corporation, Defendants-Appellants.**

No. 1 CA–CIV 5461.

Court of Appeals of Arizona, Division 1, Department A.

Oct. 14, 1982.

Rehearing Denied April 21, 1983.

Review Denied June 23, 1983.

Snell & Wilmer by Mark Wilmer, Warren E. Platt, Robert B. Hoffman, Donald M. Peters, Phoenix, for plaintiff-appellee.

Robert K. Corbin, Ariz. Atty. Gen. by Kathy W. Rand, Russell A. Kolsrud, Asst. Atty. Gen., Phoenix, for Arizona State Land Dept. and Fallini, defendants-appellants.

Lewis & Roca by Walter Cheifetz, Paul G. Ulrich, Tom Galbraith, Judith E. Sirkis, and Musick, Peeler & Garrett, Los Angeles, Cal., for Cyprus Pima Mining Co., defendant-appellant.

## OPINION

OGG, Presiding Judge.

This is an appeal by defendants-appellants Arizona State Land Department and Joe Fallini as State Land Commissioner (Department) and Cyprus Pima Mining Company (Cyprus Pima) from the order of the trial court which granted summary judgment to plaintiff-appellee Farmers Investment Company (FICO). The trial court granted FICO's request for a declaratory judgment that a public auction sale of groundwater from state land was void because the Department could not impose as a condition of the sale that the purchaser of the groundwater reimburse the Department for improvements which had been made to the overlying land.

The facts are not in dispute. On October 24, 1966, the Department executed a 10-year lease herein designated as Lease No. 906, whereby 319 acres within the Sahaurita-Continental Critical Groundwater Area were leased to the Pima Mining Company (now Cyprus Pima). The lease by its terms provided that Pima Mining Company would pay $10 per year or one cent per 1,000 gallons of water removed, whichever is greater. FICO owns and farms approximately 7,000 acres within the Critical Groundwater Area.

In a prior action, FICO alleged that Lease No. 906 was void as contrary to Arizona's Constitution and Enabling Act. In an opinion issued June 19, 1974, the Arizona Supreme Court agreed with FICO's contentions:

> We expressly hold that the State Land Department Lease No. 906, being in violation of the Arizona Constitution and the Act of Congress as expressed in Arizona's Enabling Act is null and void.

*Farmers Investment Company v. Pima Mining Company,* 111 Ariz. 56, 58–59, 523 P.2d 487, 489–90 (1974). The Court held that Lease No. 906 provided for an illegal sale of water. The court found that this sale was in contravention of those provisions of Arizona's Constitution and Enabling Act which require that natural products of state land acquired pursuant to the Enabling Act must be sold only to the highest and best bidder at a public auction.

On June 26, 1974, Cyprus Pima filed an application for a commercial lease of the same land covered by the void Lease No. 906. This new lease was executed on January 14, 1975 and provided in part as follows:

> That it is further understood and agreed that this lease is issued for the purpose of:
>
> Gathering tank, collecting and distribution water pipelines; booster pumps and booster pump building, electrical power substations and power lines to be used in connection with lessee's mining, milling and processing operations. May also be used for grazing.
>
> This lease is issued subject to adequate ingress and egress for lease numbered C–906 or any successor thereof.

From December 24, 1974 through February 25, 1975, the Department prepared to hold a public auction of the groundwater by publishing a "Notice of Public Auction Sale No. 669—Groundwater" pursuant to A.R.S. § 37–237. The notice provided in part as follows:

> The ground waters are appraised at a net price of $5.00 per acre foot and improvements claimed by the Cyprus Pima Mining Company, upon said lands necessary

for the extraction, removal or use of said waters subject to sale are appraised at $1,271,000.00. Said improvements consist of Pump house, pipe lines, substation, wells and appurtenances thereto.

> If the successful bidder is not the owner of the improvements, he must pay to the State Land Department ten percent (10%) of the appraised value of the improvements at the time of the sale and the balance within thirty (30) days.

FICO filed the complaint in the present action on January 29, 1975, seeking a declaratory judgment that the auction notice was void as imposing unlawful conditions upon bidders and that any sale held pursuant thereto would be void.

The public auction sale was scheduled for March 5, 1975. FICO appeared at the auction on that date and entered a protest to the sale as imposing an illegal condition that the purchaser reimburse Cyprus Pima for the improvements valued at $1,271,000. The City of Tucson filed a similar protest. The auction was continued to March 12, 1975.

The City of Tucson was granted the right to intervene as plaintiff in FICO's action on March 7, 1975.

FICO appeared at the auction on March 12, 1975 and submitted a bid of $45 per acre foot of water; however, this bid expressly excluded any agreement to pay the appraised cost of the improvements. FICO's bid was rejected by the Department as nonconforming. Cyprus Pima's bid of $5 per acre foot was the only bid accepted by the Department.

On August 4, 1977, Cyprus Pima filed a motion to dismiss FICO's action as moot. On August 11, 1977, Cyprus Pima filed a motion for summary judgment based on FICO's failure to exhaust administrative remedies. The trial court granted Cyprus Pima's motion to dismiss for mootness; however, this court reversed the trial court's order by memorandum decision filed January 11, 1979.

On September 6, 1979, FICO filed a motion for summary judgment. FICO's mo-

tion and Cyprus Pima's motion for summary judgment for failure to exhaust administrative remedies were argued to the trial court on November 9, 1979. On January 29, 1980, the trial court filed a memorandum opinion and order granting FICO's motion for summary judgment and denying Cyprus Pima's motion for summary judgment.

On appeal, the appellants have raised three issues for review:

1. Did the trial court err in not dismissing the action for failure to exhaust administrative remedies?

2. Did the trial court err in finding that the issues in this action were not moot?

3. Did the trial court err in finding that the Department had no authority to impose an improvements reimbursement condition on the public auction sale?

We find that the trial court did not err and, accordingly, we affirm the trial court's order granting summary judgment to FICO.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

Appellants contend that FICO is precluded from obtaining judicial review of the Department's decisions regarding public auction sale no. 669 because it failed to use the statutory procedure for appeals from decisions of the State Land Commissioner provided in A.R.S. § 37–134[1]:

§ 37–134. Appeal from decision of commissioner; notice; record; trial

A. In addition to appeals from final decisions of the commissioner to the superior court as otherwise authorized by law, an appeal from a final decision of the commissioner other than a final decision relating to the classification or appraisal of lands or improvements, made pursuant to the powers and duties conferred upon him by law, whether relating to the administration of state lands or other de-

partments or agencies of state under his jurisdiction, may be taken by any person adversely affected by the decision to the superior court of the county in which the major portion of the land, property, or rights involved in the decision is located.

B. The appeal shall be taken by filing notice thereof in writing with the commissioner and by serving an adverse party with a copy thereof within thirty days from the date notice of the decision is mailed to the last known post office address of the appellant by the commissioner.

\*　　\*　　\*　　\*　　\*　　\*

A.R.S. § 37–133(C) provides that if no appeal is taken by any person in interest within the time provided by § 37–134, the decision of the Commissioner shall be "final and conclusive."

Appellants contend that FICO's action is precluded in two respects. First, they rely on "the long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938). Appellants argue that because FICO failed to appeal to the superior court from the decision of the Department rejecting their contentions, they are not entitled to judicial relief due to a failure to exhaust administrative remedies. Second, appellants contend that FICO's failure to timely appeal the Department's decision to the superior court rendered the decision "final and conclusive", and, accordingly, that the decision was res judicata, thereby precluding review.

FICO contends that the Department had no power to adjudicate the issue of whether it could impose the reimbursement condition on the auction and that its decision thus cannot be res judicata. FICO further contends that the procedure outlined in § 37–134 is not mandatory because it allows appeals to the superior court "as otherwise

---

1. This statute was repealed by Laws 1980, Ch. 231, § 69. Decisions of the commissioner under this article are now subject to judicial review pursuant to A.R.S. §§ 12–901 et seq. *See* Laws 1980, Ch. 231, § 70.

authorized by law". FICO argues that its action was properly before the superior court. Finally, FICO argues that this case fits within several recognized exceptions to the exhaustion doctrine and that the issue of whether the action should have been dismissed for failure to exhaust administrative remedies was a question within the discretion of the trial court.

The exhaustion doctrine must be applied in each case with an "understanding of its purposes and of the particular administrative scheme involved." *McKart v. United States,* 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969). "The basic purpose of the doctrine is to allow an administrative agency to perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." *Parisi v. Davidson,* 405 U.S. 34, 37, 92 S.Ct. 815, 818, 31 L.Ed.2d 17 (1972).

The Supreme Court further discussed the purpose of the doctrine as follows:

A primary purpose is, of course, the avoidance of premature interruption of the administrative process. The agency, like a trial court, is created for the purpose of applying a statute in the first instance. Accordingly, it is normally desirable to let the agency develop the necessary factual background upon which decisions should be based. And since agency decisions are frequently of a discretionary nature or frequently require expertise, the agency should be given the first chance to exercise that discretion or to apply that expertise. And of course it is generally more efficient for the administrative process to go forward without interruption than it is to permit the parties to seek aid from the courts at various intermediate stages.

*McKart v. United States, supra,* 395 U.S. at 193–94, 89 S.Ct. at 1662–63.

The Arizona Supreme Court has held that the exhaustion of remedies rule should not be summarily applied under certain circumstances. These are cases in which the remedy is permissive under the authorizing stat-

ute; in which jurisdiction of the agency is being contested; in which the agency's expertise is unnecessary; or in which irreparable harm will be caused if the rule is followed. *Univar Corp. v. City of Phoenix,* 122 Ariz. 220, 594 P.2d 86 (1979).

The exception to the exhaustion doctrine for permissive remedies is discussed in 2 Am.Jur.2d, *Administrative Law,* § 598 at 432–33 (1962) as follows:

Some statutes providing for judicial review expressly require that such review shall be permitted only after a party claiming to be aggrieved has exhausted his administrative remedies as provided in the act.

On the other hand, the doctrine of exhaustion of administrative remedies does not apply where, by the terms or implications of the statute authorizing an administrative remedy, such remedy is permissive only or not exclusive of the judicial remedy, warranting the conclusion that the legislature intended to allow the judicial remedy even though the administrative remedy has not been exhausted. A fortiori, where, by the terms of the statute, a party is given a right of election between the administrative remedy and immediate resort to the courts, the doctrine cannot be applied to defeat the right of election.

Citing this section as authority, the Arizona Supreme Court stated:

We concede that the doctrine of exhaustion of administrative remedies does not apply where, by the terms or implications of a statute authorizing the administrative remedy, the remedy is permissive only.

*Campbell v. Chatwin,* 102 Ariz. 251, 257, 428 P.2d 108, 114 (1967).

We find that the provided remedy of appeal from final decisions of the commissioner to superior court is permissive only. The language of A.R.S. § 37–134 does not make such an appeal mandatory. The statute provides that "an appeal from a final decision of the commissioner ... *may* be taken ... to the superior court ...."

(Emphasis supplied). The statute further provides that such appeals are "[i]n addition to appeals from final decisions of the commissioner to the superior court as otherwise authorized by law .... " *Cf. Moore v. Illinois Cent. R. Co.,* 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089 (1941) (provision of Railway Labor Act that disputes "may be referred" to the adjustment board did not make an administrative finding a prerequisite to filing a suit in court).

As further support for our finding that the provided appeal is permissive, we note that there is *no higher administrative* authority to which FICO could appeal the Department's order.[2] Because the provided appeal was to superior court, the purposes of the exhaustion doctrine would not be advanced by requiring that appeal because the agency would not be able to correct its own errors or apply its expertise and there would be no "premature interruption of the agency process" by allowing FICO's action for declaratory judgment in superior court to proceed. *See McKart v. United States, supra.*

The cases relied on by appellants all involve internal administrative review procedures which were not exhausted. *See Minor v. Cochise County,* 125 Ariz. 170, 608 P.2d 309 (1980); *Valley Vendors Corporation v. City of Phoenix,* 126 Ariz. 491, 616 P.2d 951 (App.1980); *Bettwy v. Black Canyon Greyhound Park, Inc.,* 119 Ariz. 227, 580 P.2d 365 (App.1978). We have not been cited to a case where the exhaustion doctrine required appeal of the agency order to superior court. FICO argued the case at the agency level as far as it could. The administrative process had indeed run its course so as to allow judicial intervention. *Cf. Minor v. Cochise County, supra.*

◼ Appellants further argue that FICO is barred by the principles of res judicata from attacking the Department's order due to FICO's failure to appeal the specific order to superior court. When an administra-

tive body acts in a judicial capacity, courts have not hesitated to apply res judicata. *Yavapai County v. Wilkinson,* 111 Ariz. 530, 534 P.2d 735 (1975); *Campbell v. Superior Court,* 18 Ariz.App. 287, 501 P.2d 463 (1972). The short answer to any res judicata claim would be that administrative action operates as res judicata only "[w]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate .... " *United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966); *see also Associated Industries of New York State, Inc. v. United States Department of Labor,* 487 F.2d 342, 350 n. 10 (2d Cir.1973); *Campbell v. Superior Court, supra.* As Professor Davis has stated:

> Only what is adjudicated can be res judicata. Administrative action other than adjudication cannot be res judicata. Even if an exercise of the rulemaking power depends on a finding of facts, neither the rule nor the finding is regarded as res judicata.

K. Davis, 2 *Administrative Law Treatise* § 18.08 at 597 (1958).

◼ Applying these principles to the instant case, we find that the Department's decision in which it rejected FICO's protest is not entitled to res judicata effect. Those cases relied on by appellants, *Hurst v. Bisbee Unified School District No. Two,* 125 Ariz. 72, 607 P.2d 391 (App.1979), and *Hinz v. City of Phoenix,* 118 Ariz. 161, 575 P.2d 360 (App.1978), do not control. *Hurst* and *Hinz* involved instances in which the agency was exercising its discretion to resolve questions of fact pursuant to the powers conferred upon it by law. The question before the Department in the present case did not require an exercise of its discretion and there were no disputed issues of fact involved. The decision was based solely on the issue of whether the Department had

---

**2.** Compare appeals from decisions of the Commissioner to superior court under A.R.S. § 37–134 with appeals from decisions of the Commissioner relating to classification or appraisal of lands or improvements under A.R.S. § 37–214 (now § 37–215), where an appeal is provided to an administrative board of appeals.

the power to impose the reimbursement condition on the auction. We hold that we are not barred from reaching the merits of this issue by either the res judicata or exhaustion doctrines.

## MOOTNESS

Cyprus Pima argues that because public auction sale No. 669 expired by its own terms at the end of five years on March 11, 1980, the trial court erred in not dismissing the case as moot.

FICO argues that the case is not moot on three grounds: the issues of this case should be decided for the guidance of public officials in the future; the actions of the Department are capable of repetition while evading review; and rights and liabilities continue to grow out of the contract in issue.

The Department in its brief agrees with FICO that the mootness doctrine should not be applied in this case because there is a recurring question of public importance which should be decided for the guidance of public officials.

Our supreme court has held that if it appears that a case raises questions which should be decided for the guidance of public officials in the future administration of law, it will not be dismissed as moot, but will be determined upon its merits. *Camerena v. Department of Public Welfare,* 106 Ariz. 30, 470 P.2d 111 (1970); *State v. Superior Court,* 104 Ariz. 440, 454 P.2d 982 (1969); *Corbin v. Rodgers,* 53 Ariz. 35, 85 P.2d 59 (1938). Assuming that the issues are moot, we find that this is a proper case for the application of this rule, and therefore will proceed to consider the matter on the merits.

## SALE OF GROUNDWATER BY PUBLIC AUCTION

The Congress of the United States on June 20, 1910 approved an Enabling Act for the admission into the Union of New Mexi-

co and Arizona. 36 Stat. 557. Certain federal lands were granted to Arizona to be held in trust for the support of common schools and other specified institutions. Section 28 of the Arizona Enabling Act provided unprecedented restrictions governing disposition of these lands and natural products of the land.[3]

Section 28 provides that the lands, natural products and money proceeds of said lands, acquired pursuant to the Enabling Act, shall be held in trust by the State to be disposed of only in the manner provided by the Act. We quote the pertinent provisions of the Act:

Said Lands shall not be sold or leased, in whole or in part, except to the highest and best bidder at a public auction ...; nor shall any sale or contract for the sale of any timber or other natural product of such lands be made, save at the place, in the manner, and after the notice by publication provided for sales and leases of the lands themselves. Nothing herein contained shall prevent:

\*　　\*　　\*　　\*　　\*　　\*

(4) the Legislature of the State of Arizona from providing by proper laws for the protection of lessees of said lands, whereby such lessees shall be protected in their rights to their improvements (including water rights) in such manner that in case of lease or sale of said lands to other parties the former lessee shall be paid by the succeeding lessee or purchaser the value of such improvements and rights placed thereon by such lessee.

\*　　\*　　\*　　\*　　\*　　\*

Every sale, lease, conveyance, or contract of or concerning any of the lands hereby granted or confirmed, or the use thereof or the natural products thereof, not made in substantial conformity with the provisions of this Act shall be null and void, any provision of the constitu-

---

**3.** For an exhaustive analysis of the history of the Enabling Act, *see Murphy v. State,* 65 Ariz. 338, 181 P.2d 336 (1947).

tion or laws of the said State to the contrary notwithstanding.

\* \* \* \* \* \*

Article 10 of the Arizona Constitution is basically a rewrite of section 28 of the Enabling Act. Article 10, section 10 of the Constitution provides for reimbursement to residents and lessees of said lands for improvements made on the lands:

The legislature shall provide by proper laws for the sale of all state lands or the lease of such lands, and shall further provide by said laws for the protection of the actual bona fide residents and lessees of said lands, whereby such residents and lessees of said lands shall be protected in their rights to their improvements (including water rights) in such manner that in case of lease to other parties the former lessee shall be paid by the succeeding lessee the value of such improvements and rights and actual bona fide residents and lessees shall have preference to a renewal of their leases at a reassessed rental to be fixed as provided by law.

Pursuant to these mandates, the Arizona legislature enacted Title 37, which created the State Land Department and the State Land Commissioner and gave them powers to manage the lands. The pertinent provision of A.R.S. § 37–242(A), providing for improvement reimbursement upon the sale of state land, reads as follows:

When state lands on which there are improvements for which the owner thereof is entitled to be compensated are offered for sale, and the purchaser is not the owner of the improvements, the purchaser shall pay the person conducting the sale ten per cent of the appraised value of the improvements and the balance within thirty days thereafter.

A.R.S. § 37–293(A) provides in part that "[a] lessee of state lands shall be reimbursed by a succeeding lessee for improvements placed on the lands which are not removable."

Appellants note that the Enabling Act provides that the natural products of state lands are to be sold "in the manner ... provided for sales and leases of the lands themselves." Appellants thus argue that because the Enabling Act allows improvements reimbursement in case of lease or sale of the lands, it was proper for the Department to attach a reimbursement condition to the public auction sale of the groundwater.

FICO contends that the reimbursement condition was improper in three respects. First, FICO argues that because Lease no. 906 was rendered null and void by our supreme court, Cyprus Pima cannot be termed a "former lessee" of the groundwater within the meaning of the pertinent reimbursement statutes. Second, FICO argues that there is no statutory authority for a reimbursement condition on the sale of groundwater and thus the Department exceeded its authority in imposing the condition on the sale. Finally, FICO argues that the condition had a chilling effect on the public auction sale which prevented a sale to the highest and best bidder as required by the Enabling Act.

In support of its argument that there is no authority for requiring reimbursement to anyone except a former lessee, FICO relies on the reasoning of the New Mexico Supreme Court in *Application of Dasburg*, 45 N.M. 184, 113 P.2d 569 (1941). The New Mexico State Land Commissioner had entered into a contract to sell certain trust lands to Dasburg, but the Commissioner later attempted to withdraw a right of way from the land granted for a railroad which had made improvements which were not known to the Commissioner. The court observed that although the railroad had obtained the Territorial Engineer's approval for its improvements, it had failed to secure a right of way and that absent such an agreement, the railroad was a trespasser on the land in question. The court noted in dicta that the New Mexico improvements reimbursement statutes require reimbursement "only to any lessee of state lands. There is no authority for requiring payment to any one except a lessee ...." *Id.*, 113 P.2d at 575.

Similarly, the improvements in the present case placed on the land for the purpose of appropriating the groundwater were constructed under a void lease. Consequently, Cyprus Pima had no rights to the groundwater at the time of its sale. Cyprus Pima cannot be termed either a former lessee or a former purchaser of the groundwater. Public auction sale no. 669 was the initial sale of the groundwater from the land. Thus there is no "former lessee" within the meaning of the Enabling Act or the Arizona Constitution. Because there is no "former lessee" of the groundwater, there is nobody who can claim a right to reimbursement when the groundwater is sold.[4] We therefore conclude that this was an illegal sale because there was no authority for the Department to impose the requirement that all bidders, other than Cyprus Pima, must pay over one million dollars for improvements in addition to the bid price for the groundwater.

We further find that this unauthorized reimbursement condition had the effect of stifling fair competition and had a chilling effect on the bidding. *See generally State ex rel. Peevy v. Cate,* 236 Ark. 836, 371 S.W.2d 541 (Ark.1963); 4 A.L.R.2d 575–79; 7A C.J.S. *Auctions and Auctioneers* § 14 (1980).

The purpose of the grant of lands in section 28 of the Enabling Act is "to produce a fund, accumulated by sale and use of the trust lands, with which the State could support the public institutions designated by the Act." *Lassen v. Arizona,* 385 U.S. 458, 463, 87 S.Ct. 584, 587, 17 L.Ed.2d 515 (1966). The United States Supreme Court noted that the central problem which confronted the Act's draftsmen was to devise constraints which would assure that the trust received "full fair compensation" for trust lands. *Id.* After reviewing the legislative history of the Act, the Court concluded that "the purpose of Congress require

that the Act's designated beneficiaries 'derive the full benefit' of the grant." *Id.* at 468, 87 S.Ct. at 589. Because the reimbursement condition had the effect of stifling fair competition and chilling the bidding, public auction sale no. 669 was not in substantial conformity with the provision of the Enabling Act which requires that the lands, and the natural products of such lands, shall not be sold or leased "except to the highest bidder at public auction." Accordingly, public auction sale no. 669 is null and void.

The order of the trial court declaring null and void the sale of groundwater through public auction sale no. 669 is affirmed and such sale is set aside.

CORCORAN and FROEB, JJ., concur.

### SUPPLEMENTAL OPINION

OGG, Presiding Judge.

This is a supplemental opinion on rehearing in *Farmers Investment Company v. Arizona State Land Department,* 136 Ariz. 369, 666 P.2d 469 (Ct.App.1982). Appellants' Motion for Rehearing is denied. We refer to that opinion for the facts of the case.

In our original opinion, we held that the exhaustion of administrative remedies doctrine did not prevent judicial review for two reasons: (1) the language of A.R.S. § 37–134 (repealed 1980) made appeals from decisions of the State Land Commissioner permissive rather than mandatory; and (2) the basic purpose of the exhaustion doctrine would not be served by requiring exhaustion in the present case.

We relied on the language of A.R.S. § 37–134 which provided that an appeal from a final decision of the commissioner "may" be taken to the superior court "[i]n addition to" appeals as otherwise authorized

---

4. FICO further argues that the Enabling Act does not permit a reimbursement condition to be attached to a public auction when only the *natural product* from the land is being sold. FICO contends that the event which triggers the right to reimbursement is the lease or sale of the *land* on which the improvements have been placed. We note that the trial court relied on this reasoning in its judgment. We find that resolution of this contention is not necessary for the disposition of the present case.

by law in finding that the provided appeal to the superior court was permissive. We are persuaded on rehearing that the use of the verb "may" in A.R.S. § 37–134 does not make the appeal from the administrative body optional. The right to appeal is one given litigants by statute, and the right exists only by statute and is defined by the terms of the statute. *Ross v. Industrial Commission,* 82 Ariz. 9, 307 P.2d 612 (1957). We find that the use of the word "may" renders the appeal "optional" only in the sense that a party may decide not to attempt further review. *See Arizona Law Enforcement Merit System Council v. Dann,* 133 Ariz. 429, 433, 652 P.2d 168, 172 (App.1982). Our original opinion that the provided appeal in A.R.S. § 37–134 is permissive rather than mandatory was thus incorrect.

Although Cyprus Pima argued that FICO was required to exhaust all available administrative remedies prior to seeking relief in the superior court, the only remedy cited to us was the appeal "from final decisions of the commissioner to the superior court" provided in A.R.S. § 37–134. We noted that the basic purpose of the exhaustion doctrine is to "allow an administrative agency to perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." *Parisi v. Davidson,* 405 U.S. 34, 37, 92 S.Ct. 815, 818, 31 L.Ed.2d 17 (1972). We found that because the provided appeal was to superior court, the purposes of the exhaustion doctrine would not be advanced by requiring that appeal because the agency would not be able to correct its own errors or apply its expertise and there would be no premature interruption of the agency process by allowing FICO's action for declaratory judgment in superior court to proceed.

On rehearing, Cyprus Pima has referred us to administrative remedies which were not presented in the appellate briefs in this matter. Cyprus Pima contends that there was a "premature interruption of the agency process" because these remedies were not exhausted. Cyprus Pima relies on then-existing Rule 19 of the Rules and Regulations of the State Land Department (now A.C.R.R. R12–5–01R), which provides in part as follows:

> Request for hearing. When any matter is at issue before the Commissioner for decision, upon timely application by any person who may be affected by the Commissioner's decision he may request in writing a hearing or oral argument before the Commissioner, serving a copy of such application upon any adverse party. Upon receipt of said application for hearing, the Commissioner shall assign a date and place for said hearing, giving notice thereof to all parties in interest of record before the Department. . . .

Cyprus Pima also argues that FICO failed to seek reconsideration of the commissioner's decision either through former Rule 19 or through the mechanisms supplied by the Arizona Rules of Civil Procedure, made applicable by former Land Department Rule 30 (now A.C.R.R. R12–5–01CC).[1]

FICO contends that by appearing at the auction and entering a bid which was rejected as nonconforming, it did not turn the matter into a contested case requiring a decision by the commissioner. The issue thus becomes whether FICO entered the administrative decision-making process so as to require the exhaustion of an administrative remedy. Further factual background is necessary before discussion of this issue.

In *Farmers Investment Company v. Pima Mining Company,* 111 Ariz. 56, 523 P.2d 487 (1974), the Arizona Supreme Court held that Cyprus Pima's commercial lease No. 906 with the State Land Department for the extraction of groundwater was in violation of Arizona's Enabling Act and the Arizona Constitution and was therefore void.

---

1. It is well established that if a rehearing procedure is provided, either by statute or rule, a party aggrieved by an administrative decision must avail himself of such administrative review remedy as a condition to judicial review. *Herzberg v. David,* 27 Ariz.App. 418, 555 P.2d 677 (1976).

The Court determined that water is a natural product of the land which must be sold at public auction sale to the highest and best bidder in the same manner as state trust land.

As a result of that decision, the State Land Commissioner issued uniform notices of public hearing on July 1, 1974, pursuant to A.R.S. § 37–289.A (amended 1981), for cancellation of the 28 commercial leases for extraction of groundwater and numerous mineral leases for the removal of sand and gravel.

On August 7, 1974, the State Land Commissioner held a hearing to establish a policy to deal with these problems. FICO did not appear at this hearing and it therefore could not be considered a "person in interest of record" under the provisions of A.R.S. § 37–133.B.[2] The commissioner issued his decision on October 7, 1974, setting forth the reimbursement policy. The notice of the terms of the public auction sale was published between December 24, 1974 and February 25, 1975.

On January 31, 1975, FICO filed an action in the Maricopa County Superior Court for a declaratory judgment, alleging that the auction sale, as noticed, imposed unlawful conditions and was therefore void. In the action for declaratory judgment, FICO contended that the reimbursement conditions discriminated in favor of Cyprus Pima and prevented free and fair bidding by all prospective bidders. FICO filed the action as a taxpayer and as a water user in the subject groundwater basin.

The public auction sale was scheduled for March 5, 1975. Warren E. Culbertson, Vice-President of FICO, appeared at the auction and read a written statement of protest. The statement alleged that the sale was an illegal sale because, among other reasons, the sale was subject to an illegal reimbursement condition. A copy of this protest was attached to Cyprus Pima's motion for summary judgment.

The auction was continued to March 12, 1975. At that time, FICO entered a bid that expressly excluded an agreement to pay for the Cyprus Pima improvements. FICO's bid was rejected as nonconforming. Cyprus Pima entered the minimum bid of $5.00 per acre foot of water. Cyprus Pima was declared the high bidder. The acceptance of the Cyprus Pima bid was formalized by an order of the State Land Commissioner on March 14, 1975. A copy of this order was mailed to FICO on March 27, 1975, pursuant to A.R.S. § 37–133.B, and the sale to Cyprus Pima was later finalized.

■ It is the opinion of this court that the filing of the declaratory judgment action and the later filing of the conditional bid at the auction did not place FICO within the administrative decision-making process which would require FICO to exhaust all administrative remedies before resorting to the court action. The commissioner's October 7, 1974 decision on the challenged reimbursement provision was made months before the filing of FICO's action for declaratory judgment on January 31, 1975. This decision was made by the commissioner after a hearing in which FICO was neither a participant nor a party. As of the date of the filing of the declaratory judgment action, FICO was not within the administrative decision-making process of the Arizona State Land Department.

■ The submission of the conditional bid, which was rejected as nonconforming, did not place FICO within the ambit of the "decision rendered by the commissioner" concept of A.R.S. §§ 37–133 and 37–134.[3] Such bid did not place a matter at issue

---

2. § 37–133. Decisions of commissioner; filing; notice to persons in interest; time for appeals.

\* \* \* \* \* \*

B. Notice of the decisions shall be given by the commissioner to *any person in interest of record* in the department by notifying the person in interest by registered mail, return receipt requested, addressed to the last known post office address of record in the department. (Emphasis added)

3. A.R.S. §§ 37–133.C and 37–134.B provide that if no appeal is taken by any person in interest within thirty days from the date the notice of decision is mailed, the decision of the commissioner shall be final and conclusive.

before the commissioner for decision and accordingly, State Land Department Rules 19 and 30 have no application under these facts. We further find that the March 14, 1975 order of the commissioner which formalized the acceptance of the Cyprus Pima bid did not mention or address FICO's contentions relative to the illegal reimbursement condition. Accordingly, such order cannot be considered a decision rendered by the commissioner which is entitled to res judicata effect on any of the issues raised in FICO's declaratory judgment action.

We conclude that FICO was never involved in the administrative process which resulted in the State Land Commissioner's decision to require reimbursement for improvements. Because FICO was not a party to any proceeding before the State Land Department in which the reimbursement condition was at issue, it was not required to exhaust any administrative remedies with the Department prior to challenging the condition through its declaratory judgment action in superior court.

The decision of the trial court is affirmed.

CORCORAN and FROEB, JJ., concur.