**Theresa Elizabeth PEREZ, Plaintiff,**

v.

**Christopher Frank CURCIO, as Cultural Services Supervisor, Department of Parks, Recreation and Libraries, City of Phoenix, Michael Whiting, as Superintendent of Special Services, Department of Parks, Recreation and Libraries, City of Phoenix; Wayne Korinek, as Assistant Director, Department of Parks, Recreation and Libraries, City of Phoenix; James Colley, as Director, Department of Parks, Recreation and Libraries, City of Phoenix; City of Phoenix, a municipal corporation, Defendants.**

**No. CIV 83–2469 PHX CLH.**

United States District Court,
D. Arizona.

March 28, 1989.

Ruth V. McGregor, Phoenix, Ariz., for plaintiff.

Richard S. Cohen, Phoenix, Ariz., for defendants.

## MEMORANDUM OPINION AND ORDER

HARDY, District Judge.

The Court has had under advisement the defendants' renewed motion for partial summary judgment on three of the plaintiff Perez's pendent state law claims, intentional infliction of emotional distress (Count 2), breach of covenant of good faith and fair dealing (Count 3), and breach of contract (Count 5). The motion will be granted on Counts 1 and 2, and denied on Count 3.

## FACTUAL BACKGROUND

Perez was employed by the defendant City of Phoenix in 1969 and placed in charge of coordinating music programming for the Cultural Services Section of the Parks and Recreation Department. On January 15, 1979, she came under the direct supervision of the defendant Curcio, the newly appointed Cultural Services' Supervisor.

In June 1982, as a result of a department-wide reorganization, Perez was officially reclassified as a Recreation Coordinator III. As a consequence, she became a probationary employee for one year. A significant difference during the probationary period is that whereas a nonprobationary employee has an automatic right, upon appeal of a disciplinary action, to a hearing by the Civil Service Board, the Board may in its discretion deny or grant a hearing to a probationary employee. The reclassification had no effect on her duties; she continued to coordinate music programming.

On June 7, 1982, Perez was demoted from Recreation Coordinator III to Recreation Coordinator II and was transferred to the Washington Adult Center. She did not appeal and request a hearing by the Civil Service Board. However, on December 2, 1982, she filed a charge with the Arizona Civil Rights Division (ACRD) that she had been demoted because of her age. A copy of the charge was not received by the City until January 7, 1983. After investigating the charge, the ACRD found that there was "no reasonable cause" for the allegations.

One of the music coordinator's responsibilities was to prepare and sign time cards for part-time employees. Before any of the defendants knew that Perez had filed a charge with the ACRD her successor discovered that Perez had authorized payment of wages to three part-time employees for times they had not actually worked.

During January 1983 the City mailed Federal W-2 forms to all its employees. Shortly thereafter, the personnel office received telephone calls from a number of part-time employees, who reported that their W-2 forms showed income they had never received. Investigation revealed that Perez had utilized an unauthorized "substitute system." An employee who was on the payroll but unable to work was told to procure a substitute and pay the substitute, who was not on the payroll, out of the employee's own pocket.

On February 3, 1983, the City terminated Perez's employment. She filed a second charge with the ACRD, alleging she had been terminated in retaliation for filing her earlier charge. After investigation, the ACRD found that there was "no reasonable cause for the allegations." She also requested and was given a full evidentiary hearing to contest her termination before the Civil Service Board. She was represented at the hearing by counsel, who was permitted to cross examine all the witnesses against her. She also had the right to call witnesses in her defense. The Board upheld the decision to terminate her.

Perez was about three years away from eligibility for retirement when she was terminated. Had she left her contributions in the fund, she would have been entitled to receive a pension when she reached the qualifying age, although the amount of her pension would have been less because no contributions would have been made for the last three years.

## EMOTIONAL DISTRESS

Arizona recognizes the tort of intentional infliction of emotional distress. *Savage v.*

*Boies,* 77 Ariz. 355, 272 P.2d 349 (1954). The conduct alleged to have inflicted emotional distress must be "atrocious" and "beyond all possible bounds of decency." *Lucchesi v. Frederic N. Stimmell, M.D., Ltd.,* 149 Ariz 76, 78, 716 P.2d 1013, 1015 (1986). Three elements are necessary to establish the tort: "(1) the defendant's conduct must be capable of being characterized as 'extreme and outrageous,' (2) the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that distress will result from the defendant's conduct, and (3) the defendant's conduct must have caused severe emotional distress." 149 Ariz. at 78–79, 716 P.2d at 1015–16.

Perez contends that the following conduct of the defendants was outrageous: They were aware of her long service to the City and knew the difficulty she would face, given her age, in finding a comparable position after her termination; they demoted her and assigned her to a senior adult center to a position that did not involve music and for which she had no special qualifications; when she challenged the demotion, they began a "witch-hunt" to "dig up" good cause to terminate her; they relied upon the story given by three part-time employees; they confronted her with vague allegations and fired her when she could not rebut them on "a moment's notice;" they deprived her of the pension to which she would soon have been entitled.

■ When a claim of intentional infliction of emotional distress is made, "[t]he court in the first instance must determine whether the acts complained of can be considered extreme and outrageous so as to state a claim for relief." *Gilbert v. Board of Medical Examiners,* 155 Ariz. 169, 177, 745 P.2d 617, 625 (App.1987). The conduct of the defendants can hardly be characterized as "outrageous," "extreme," or "beyond the bounds of human decency." What Perez characterizes as a "witch-hunt" began before the defendants were aware that she had challenged her demotion as being age discrimination. It was not unreasonable for the City to rely on the three part-time employees since the infor-mation they provided regarding time cards approved by Perez could reasonably constitute grounds for termination of her employment in the absence of pretext. In addition, termination did not deprive Perez of her right to draw a pension when she reached the qualifying age.

## BREACH OF CONTRACT

### I. Termination for Good Cause as an Implied–in–Fact Contract Term

■ The breach of contract claim in Perez's first amended complaint alleges that "the policies and procedures set forth in the Personnel Rules of the City of Phoenix, and in the course of conduct of the City of Phoenix and its agents, ... constitute express and implied terms of Perez's employment contract with defendants."

Arizona is among the jurisdictions that have recognized the implied-in-fact contract term as an exception to the employment-at-will doctrine. *Wagenseller v. Scottsdale Memorial Hospital,* 147 Ariz. 370, 381, 710 P.2d 1025, 1036 (Ariz.1985). In *Leikvold v. Valley View Community Hospital,* 141 Ariz. 544, 688 P.2d 170 (Ariz.1984), the Arizona Supreme Court held that a personnel manual can become part of an employment contract and remanded the case for a jury determination as to whether the particular manual given to Leikvold had become part of her employment contract with Valley View. The *Leikvold* court provided the following rule for determining whether a particular statement by an employer becomes a part of an employment contract:

> Whether any particular personnel manual modifies any particular employment at will relationship and becomes part of the particular employment contract is a question of fact. Evidence relevant to this factual decision includes the language used in the personnel manual as well as the employer's course of conduct and oral representations regarding it.

*Leikvold,* 141 Ariz. at 548, 688 P.2d at 174.

The *Leikvold* court held that summary judgment on such an issue is inappropriate "[b]ecause a material question—whether the policies manual was incorporated into

and became a part of the terms of the employment contract—remains in dispute." *Id.*

Perez contends that the City's personnel rules provide that no person shall be demoted or dismissed because of age and this guaranty became an implied-in-fact contract term that was breached by her wrongful demotion and termination based on her age. She has not cited any specific rule on this point.

Rule 4a of the Personnel Rules, which outlines the City's position on "Discrimination" under the general heading "Fair Employment Practices," provides:

4a—Discrimination

No person in the City service shall be appointed or promoted to, or demoted or dismissed from, any position or in any way favored or discriminated against with respect to employment because of his political or religious opinions or affiliations; nor shall there by [sic] any discrimination in favor of, or against any applicant because of age, race, sex, handicap, or national origin. An applicant, eligible or employee shall be considered solely on the basis of his qualifications as required by the position he seeks or holds relative to experience, training, personal and physical fitness, abilities, skills and knowledge.

A plain reading of the first paragraph of Rule 4a suggests that City employees are only protected from discrimination based on their political or religious opinions or affiliations. The first paragraph indicates that only "applicants" are protected from discrimination "based on age, race, color, sex, handicap or national origin."

Considering only the first paragraph, one would have to conclude that since Perez was not an "applicant," nothing in the personnel rules affords a contractual right not to be demoted or terminated because of her age. However, this same reasoning would have to be applied to the other forms of discrimination mentioned. It is highly unlikely that the City of Phoenix's personnel rules would explicitly exclude employees, as opposed to "applicants," from protection against demotion or termination based on race or color, at the same time as they guaranty them protection from discrimination based on their religious or political beliefs or affiliations.

It is the second paragraph in Rule 4a which broadens and defines the intent behind the language in the first paragraph, and thereby provides Perez with her breach of contract claim. The second paragraph provides that "[a]n applicant, eligible or employee shall be considered solely on the basis of his qualifications as required by the position he seeks or holds...." This paragraph, when read in conjunction with the first paragraph, specifically provides that an employee shall be considered "solely on the basis of his qualifications" and therefore implies that an employee shall not be demoted or terminated "because of age, race, color, sex, handicap, or national origin," or any other reason not related to his qualifications for the job he seeks or holds.

The determination of whether Rule 4a of the City of Phoenix's Personnel Rules became a part of Perez's employment contract is a question of fact for the jury. *Leikvold,* 141 Ariz. at 548, 688 P.2d at 174.

## II. Statute of Limitations

The City contends that Perez's action is barred by Arizona's one-year statute of limitations governing liabilities created by statute. A.R.S. Section 12–541 provides:

There shall be commenced and prosecuted within one year after the cause of action accrues, and not afterward, the following actions:

\*    \*    \*    \*    \*    \*

(3) Upon a liability created by statute, other than a penalty or forfeiture.

In *Day v. Schenectady Discount Corp.,* 125 Ariz. 564, 611 P.2d 568 (App.1980), the Arizona Court of Appeals held:

"[t]he phrase 'liability created by statute' ... is defined as a liability that comes into being solely by statute and as having no existence prior to the enactment creating it. It is a liability which would not exist but for the statute. *Maricopa County Municipal Water Conservation*

*Dist. No. 1 v. Warford,* 69 Ariz. 1, 206 P.2d 1168 (1949); *Griffen v. Cole,* 60 Ariz. 83, 131 P.2d 989 (1942). The phrase 'liability created by statute' has been held not to include or extend to actions arising under the common law."

*Id.* 125 Ariz. at 567, 611 P.2d at 571.

In subsequent cases, the Arizona court of appeals has held that the one year statute of limitations period in A.R.S. Section 12–541(3) applies to actions which have created a new cause of action unknown at common law. *Murdock v. Balle,* 144 Ariz. 136, 138–39, 696 P.2d 230, 233 (App.1985).

The City argues that the terms of Perez's employment were created through the enactment of the City's Personnel Rules as a municipal ordinance and that she would not have had a cause of action but for that ordinance. The City contends that since "any contractual rights that Perez may have had flowed directly from the Council's legislative action," her failure to file her claim within the required one year statute of limitations bars her claim for breach of contract to the extent it is based on her demotion.

It does not follow that a statute creates liability for breach of contract simply because the statute creates the terms of the contract. In other words, in order to fall within the protection of A.R.S. 12–541, the municipal ordinance approving the City's Personnel Rules would have had to create a new cause of action for the breach of the contract term created by the statute.

■ The municipal ordinance merely created the terms of Perez's employment contract with the City. It did not provide an independent right to sue for damages associated with the breach of those contract terms. The right to sue is still subsumed within the common law breach of contract claim recognized in *Leikvold* and *Wagenseller.* The one year statute of limitations is triggered only when the statute in question creates the liability, and not merely the contractual right, upon which the disputed cause of action is based.

### III. Res Judicata, Collateral Estoppel and Exhaustion of Remedies

The City argues that the Civil Service Board's administrative decision that she was fired for good cause should bar Perez's breach of contract claim with respect to her termination under the doctrines of collateral estoppel and res judicata. The City also argues that Perez's breach of contract claim should be barred with respect to her demotion since she failed to exhaust administrative remedies by not appealing her demotion to the Civil Service Board.

#### (1) *Res Judicata and Collateral Estoppel*

The City points out that the doctrine of res judicata bars relitigation of an entire cause of action that was or could have been previously litigated between the same parties or their privies. *Montana v. United States,* 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). Collateral estoppel, on the other hand, gives final and binding effect to factual or legal conclusions as to matters *actually litigated* and necessarily and finally decided in a prior action. *Id.* (emphasis added)

Federal courts must give preclusive effect to unreviewed administrative findings under federal common law rules of preclusion. *University of Tennessee v. Elliott,* 478 U.S. 788, 106 S.Ct. 3220, 3224, 92 L.Ed. 2d 635 (1986). In *Elliott,* the court held that state administrative proceedings must be given the same preclusive effect they would be given in that state when an administrative agency, "acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had adequate opportunity to litigate." 106 S.Ct. at 3227 (quoting *United States v. Utah Construction & Mining Company,* 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966)).

In *Guild Wineries and Distilleries v. Whitehall Co.,* 853 F.2d 755, 758 (9th Cir. 1988), the Ninth Circuit held that "the federal common law rules of preclusion described in *Elliott* extend to state administrative adjudications of legal as well as

factual issues, even if unreviewed, so long as the state proceedings satisfies the requirements of fairness outlined in *Utah Construction....*" As a result, in determining whether the administrative decision is entitled to collateral estoppel effect, a court "must determine whether the Board acted in a judicial capacity to resolve issues of fact properly before it, and whether the parties had an adequate opportunity to litigate these factual issues before the Board." *Mack v. South Bay Beer Distributors,* 798 F.2d 1279, 1283 (9th Cir.1986).

In *Mack,* the Ninth Circuit declined to give preclusive effect primarily because the plaintiff had had no opportunity to litigate his federal age discrimination claim. The court found that the nature of the unemployment compensation hearing failed to meet the *Utah Construction* threshold determination of fairness since the administrative law judge "made no specific findings concerning Mack's age discrimination claim and the record does not indicate whether evidence was ever presented on the issue." 798 F.2d at 1283–84.

The City argues that the Board's determination that Perez was fired for good cause should have a preclusive effect on her breach of contract claim that she was fired for bad cause (age discrimination). Perez argues that the Board's focus on inquiry was on whether Perez's discharge should be upheld, and not on her breach of contract claims. She also notes that the Board's powers of relief are circumscribed to reinstatement and back pay while her remedies under a breach of contract action are much broader.

■ Although the cause of action in *Mack* was based on a federal age discrimination claim, and this case involves a breach of contract action, an essential element to Perez's cause of action for breach of contract is her claim that she was terminated because of her age. Although the Civil Service Board hearing found that the City had good cause to terminate Perez, absolutely no evidence was presented on the issue of age discrimination and there were no findings of fact on this issue. As a result, it does not appear as if Perez had

an adequate opportunity to litigate the factual issues central to her breach of contract claim before the Civil Service Board. The Board's decision should therefore not be given preclusive effect over her breach of contract claim.

### (2) *Exhaustion of Remedies*

■ The City argues that since Perez did not appeal her demotion to the Civil Service Board she is barred from bringing a claim for breach of contract based on her demotion because she failed to exhaust her administrative remedies.

The exhaustion doctrine must be applied in each case with "an understanding of its purpose and of the particular administrative scheme involved." *McKart v. United States,* 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969). "The basic purpose of the doctrine is to allow an administrative agency to perform functions within it special competence—to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." *Parisi v. Davidson,* 405 U.S. 34, 37, 92 S.Ct. 815, 818, 31 L.Ed.2d 17 (1972). *See Farmers Investment Co. v. Arizona State Land Department,* 136 Ariz. 369, 373, 666 P.2d 469, 473 (App. 1983).

The Arizona Supreme Court has held that the exhaustion of remedies rule should not be applied under certain circumstances, which includes those cases where the remedy is permissive under the authorizing statute. In *Campbell v. Chatwin,* 102 Ariz. 251, 257, 428 P.2d 108, 114 (1967), the Arizona Supreme Court conceded:

> that the doctrine of exhaustion of remedies does not apply where, by the terms or implications of a statute authorizing the administrative remedy, the remedy is permissive only.... Further, we are inclined toward the position that even where otherwise proper, the exhaustion of remedies rule should not be summarily applied where ... irreparable harm will be caused to the party by requiring the exhaustion of the administrative remedy.

*See also Univar Corp. v. City of Phoenix,* 122 Ariz. 220, 224, 594 P.2d 86, 90 (Ariz. 1979). In *Farmers Investment Company,* the Arizona Court of Appeals held that an administrative remedy is permissive when the language of the authorizing statute does not make such an appeal mandatory. 136 Ariz. at 373, 666 P.2d at 473.

At the time of her demotion Perez had been reclassified as a probationary employee. Because she had not completed her probationary period, Perez did not have a right to appeal her demotion to the Civil Service Board. City Personnel Rule 10b, "Disqualification of Probationer," provides that "[a] dismissed, suspended, or demoted probationary employee shall not have a right to a Civil Service Board Hearing...." The City notes that Paragraph 26 of Perez's Separation Notice provides that Perez has a right to request an appeal hearing before the Civil Service Board. Although Perz's separation notice did indicate she had a right to request a hearing, nothing in the separation notice indicates she was entitled to a hearing. The right to request a hearing, when read in conjunction with Rule 10b, indicates that the administrative remedy available to Perez was permissive and therefore not subject to the exhaustion doctrine under the Arizona Supreme Court's ruling in *Campbell.*

■ The City's contention that the proper avenue for appeal for Perez's termination is a special action to the Superior Court of Maricopa County is equally without merit. Perez has brought independent, previously unlitigated tort and breach of contract claims. She is not seeking review of the Civil Service Commission's determination that she is not entitled to reinstatement.

## COVENANT OF GOOD FAITH AND FAIR DEALING

"[T]he implied-in-law covenant of good faith and fair dealing protects the right of the parties to an agreement to receive the benefits of the agreement that they have entered into. The denial of a party's right to choose those benefits, whatever they are, will breach the duty of good faith

implicit in the contract. Thus, the relevant inquiry always will focus on the contract itself, to determine what the parties did agree to." *Wagenseller,* 147 Ariz. at 385, 710 P.2d at 1040.

Only benefits earned during employment are recoverable under the implied covenant theory. *Bernstein v. Aetna Life & Casualty,* 843 F.2d 359, 365 (9th Cir.1988). In *Bernstein,* the Ninth Circuit upheld summary judgment on an implied covenant claim citing the Arizona Supreme Court's decision in *Wagenseller.* The *Wagenseller* court expressly declined to apply the implied covenant of good faith and fair dealing to a case where an employee alleged she was deprived of the tenure required to earn pension and retirement benefits. 147 Ariz. at 385, 710 P.2d at 1040.

■ Perez has alleged that she was terminated for bad cause on the eve of qualifying for her pension. Perez would have still been eligible for a pension after her termination, once she reached the qualifying age, although it would necessarily have been less than she would have received if she had not been terminated. As a result, she received all of the benefits that had accrued up until the time she was terminated. The only benefits she was deprived of were those additional benefits that would have accrued had she not been terminated. Consequently, she fails to state a claim for breach of the implied covenant of good faith and fair dealing upon which relief can be granted.

IT IS ORDERED granting the defendants' motion for partial summary judgment on plaintiff's claims for intentional infliction of emotional distress and breach of implied covenant of good faith and fair dealing, and denying the defendants' motion for partial summary judgment on plaintiff's claim for breach of contract.